```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FIRST TENNESSEE BANK, N.A.,

                         Plaintiff,
                                                              REPORT &
            -against-                                         RECOMMENDATION
                                                              10-CV-4925 (FB)
LORNA A. BLACK,

                         Defendant.
-----------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

Introduction

Plaintiff, First Tennessee Bank, N.A. ("First Tennessee"), brings this action alleging that defendant, Lorna A. Black breached the terms of a multi-state home equity line of credit agreement ("Credit Agreement" or "Agreement") by failing to remit scheduled payments. More specifically, plaintiff alleges that defendant contracted on or about May 4, 2005 for a home equity line of credit and that she subsequently failed to pay sums due under the Agreement, despite First Tennessee's demands and continued performance. Compl. ¶¶ 5-9, Docket Entry 1. Upon plaintiff's application, the Clerk of Court noted the default of defendant. Docket Entry 9. By Order dated February 15, 2011, the Honorable Frederic Block referred plaintiff's motion for a default judgment to me for a report and recommendation.

Background

On May 4, 2005, defendant signed a Credit Agreement with First Horizon Home Loan Corporation ("First Horizon") whereby defendant received a home equity line of credit in the amount of $59,900, secured by a mortgage on real property in California. Compl. ¶ 5; Chapman Aff. ¶¶ 2-3, Docket Entry 6-3; Agreement.[1] Under the Credit Agreement, defendant was required to make minimum payments within thirty days of each monthly billing cycle. Chapman

---

[1] A copy of the Credit Agreement is attached as Exhibit A to the Chapman Affidavit, Docket Entry 6-4.

Aff. ¶ 9; Credit Agreement ¶¶ 6-7. Defendant breached the agreement by failing to remit the required payments, beginning in September, 2006. Compl. ¶ 7; Chapman Aff. ¶¶ 15-16. On May 30, 2007, First Horizon merged with and into plaintiff First Tennessee. Chapman Aff. ¶ 4 & Ex. B, Docket Entry 6-4 (Certification from the Office of the Comptroller of the Currency evidencing the merger).

## Discussion

A.  Service

I initially questioned whether plaintiff properly served defendant. Docket Entry 10. For the reasons discussed below, I now find that service on Black was proper.

Plaintiff's affidavit of service indicates that it served the defendant in November, 2010 at 1249 Ocean Avenue Apt. 4G, Brooklyn, NY ("the Ocean Avenue address") by using what is commonly referred to as the "nail and mail" method pursuant to N.Y. C.P.L.R. 308(4).[2] Docket Entry 3. Under that provision, service may be effected by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode . . . and by . . . mailing the summons to such person at his or her last known residence."[3] N.Y. C.P.L.R. 308(4). A person's dwelling or place of abode must be established through "a degree of permanence and stability" for service to be proper. *See Feinstein v. Bergner*, 48 N.Y.2d 234, 239 n.3 (1979); *Argent Mortg. Co., v. Vlahos*, 66 A.D.3d 721, 722 (2d Dept. 2009); *Polygram Merch., Inc. v. New York Wholesale Co.*, 2000 WL 23287, at *2 (S.D.N.Y Jan. 13, 2000).

While the complaint alleges that defendant resides at the address where service was

---

[2] Federal Rule of Civil Procedure 4(e) permits service pursuant to the law of the state where the district court is located or where service is made.
[3] Prior to using the nail and mail method, a plaintiff must make diligent efforts to effect personal service. N.Y. C.P.L.R. 308(4). According to the affidavit of service, plaintiff's process server made three attempts to serve defendant at the Ocean Avenue address at various times on three consecutive dates. Docket Entry 3.

made, plaintiff's documentation in support of its motion for default judgment suggested that defendant may have resided in California at the time of service. For example, the home equity loan secured real property located in California and plaintiff sent defendant's loan statements to a California address. Chapman Aff. ¶ 3; Credit Agreement ¶ 13; Docket Entry 13. Accordingly, on February 18, 2011, I issued an order directing plaintiff to file a supplemental affidavit explaining the basis for its assertion that defendant was properly served in Brooklyn, New York. Docket Entry 10.

Plaintiff asserts that its investigation revealed that defendant resided at the Ocean Avenue address in Brooklyn from approximately May, 2008 through at least February, 2011. Fass. Supp. Aff. ¶¶ 5-11 & Exs. G-K, Docket Entry 11. In particular, a Lexis/Nexis search in October, 2010, just prior to plaintiff's attempt to serve defendant, indicated that defendant probably resided at the Ocean Avenue address. *Id*. ¶ 6 & Ex. G. Moreover, plaintiff's investigation revealed that defendant has not lived in California since approximately November, 2008. *Id.* ¶ 10. Furthermore, on February 3, 2009, defendant registered to vote using the Ocean Avenue address as her residence and did in fact vote in her assigned district in November of 2010. Fass Supp. Aff. ¶ 11 & Ex K. Taken together, the evidence sufficiently indicates the degree of permanence necessary to qualify defendant's Brooklyn address as her dwelling or usual place of abode at the time of service in November, 2010.[4] *See Polygram Merch., Inc.*, 2000 WL 23287, at *2-3. I therefore conclude that defendant was properly served under N.Y. CPLR 308(4) at the Ocean

---

[4] On March 23, 2011, plaintiff notified the Court that the supplemental submissions plaintiff filed in support of its motion for default judgment, which it mailed to defendant's Ocean Avenue address on February 23, 2011, was returned with a statement, "no longer at this address." Docket Entry 16. Prior to that date, none of the correspondence sent to defendant at Ocean Avenue was returned. *Id.* While Federal Rule of Civil Procedure 55(b) requires that a party that has appeared be served with written notice at least seven days prior to a default judgment hearing, defendant has never appeared in this action. "By its terms, Rule 55(b)(2) requires advance written notice only if the party against whom a default judgment is sought has appeared." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Since defendant has not appeared, she is "not entitled to notice of [plaintiff's] default judgment motion." *Id.* at 107. I therefore find that plaintiff has met its obligations under the Rules.

Avenue address.

B.  Applicable Law

This court, sitting in diversity, must apply the law of the forum state, here New York, on outcome determinative issues, including any choice-of-law rules. *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994). "Under the law of New York, the parties may stipulate that the law of a state bearing a reasonable relation to the transaction governs their rights and duties under the transaction." *Id*. (citing N.Y. U.C.C. § 1-105(1)); *see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines*, 230 F.3d 549, 556 (2d Cir. 2000); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 2009 WL 935665, at *10 (S.D.N.Y. Apr. 7, 2009). Here, the Agreement states that Tennessee law applies. Agreement ¶ 30. Plaintiff's principal place of business is in Tennessee. Compl. ¶ 3. Thus, Tennessee bears a reasonable relation to the Agreement and I will apply Tennessee law on plaintiff's claim.

C.  Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

To make out a claim for breach of contract under Tennessee law a plaintiff must allege:

(1) the existence of an enforceable contract; (2) that the defendant's nonperformance amounted to a breach of that contract; and (3) that the breach caused damages to the plaintiff. *See C & W Asset Acquisition LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007); *Life Care Ctrs. Of Am., Inc. v. Charles Town Assocs. Ltd. P'Ship, LPIMC*, 79 F.3d 496, 514 (6th Cir. 1996) (stating the elements of a breach of contract claim under Tennessee law). Here, plaintiff's complaint alleges that the parties entered into a Credit Agreement, which defendant breached by failing to remit monthly payments due under its terms, causing plaintiff to sustain damages as a result. Compl. ¶¶ 5-9. *See also* Agreement. Accordingly, plaintiff has adequately pled a claim for breach of contract and entry of a default judgment against defendant is appropriate.

D.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Defendant has not submitted any opposition to plaintiff's motion. Accordingly, a hearing on the issue of damages is unwarranted.

Plaintiff seeks a judgment in the total amount of $83,628.67, comprised of $58,857.02 in

unpaid principal on defendant's equity line of credit, and $24,771.65 in interest on that sum.[5] Dowling Aff. ¶ 11, Docket Entry 12. Plaintiff has submitted a copy of defendant's payment history evidencing the principal balance owed by defendant. *Id*. Ex. A, Docket Entry 12-2. Defendant made her last monthly payment on August 4, 2006. Chapman Aff. ¶¶ 15, 16. Subsequently, despite demand by plaintiff, defendant did not make any further timely payments. *Id*. ¶ 16. On November 29, 2006, plaintiff accelerated defendant's loan and defendant was required to pay immediately a total of $62,626.16, which included the unpaid principal and all applicable fees. Dowling Aff. ¶ 5 & Ex. A. On March 12, 2008, plaintiff made one final payment of $3,794.81. *Id*. ¶ 6 & Ex A. Plaintiff applied this payment to defendant's balance and added a late fee of $25.67, which brought defendant's balance to $58,857.02, the principal sum plaintiff seeks. *Id*. ¶ 7 & Ex. A. Accordingly, I respectfully recommend that plaintiff be awarded this amount.

Plaintiff also seeks interest at the rate stipulated in the Credit Agreement beginning from November 29, 2006, the date plaintiff "charged off" defendant's account and accelerated her loan repayment. Dowling Aff. ¶¶ 9-10. Plaintiff seeks interest for the entire time period at the rate of 9.75% per annum, the rate in effect in November, 2006 when it charged off the account.[6] I recommend that plaintiff be awarded interest but at different rates than those sought by plaintiff.

Under Tennessee law, "[i]nterest on negotiable and nonnegotiable instruments shall accrue according to the terms of the instrument." TENN. CODE ANN. § 47-14-109. The terms of

---

[5] Plaintiff waives any claim for attorney's fees. Fass Supp. Aff. ¶ 4.
[6] In light of defendant's payment in March, 2008, plaintiff calculates the interest in two time periods. For the period running from November 29, 2006 through March 12, 2008, the date defendant made an additional payment, plaintiff seeks interest on the sum of $62,626.16. For the period running from March 12, 2008 through March 11, 2011, the date plaintiff submitted its motion, plaintiff seeks interest on the adjusted sum of $58,857.02.

the Credit Agreement dictate that defendant's annual percentage rate is a variable rate equal to the "Prime Rate" plus a "Rate Differential" set at 1.5%. Agreement ¶ 10(b). The Prime Rate is pegged to the "Money Rates Section of *The Wall Street Journal*" and calculated each month on a "Determination Date," which, pursuant to the Credit Agreement, is the date on which defendant's monthly billing cycle closes.[7] *Id*.

Plaintiff's use of the 9.75% rate appears to be calculated by reference to the Prime Rate in effect on the date plaintiff charged off defendant's account on November 29, 2006.[8] However, while plaintiff has used the 9.75% interest rate for the entirety of the interest-bearing period, the annual percentage rate in the Credit Agreement is variable and adjusts to fluctuations in the Prime Rate. Dowling Aff. ¶¶ 9, 10.

Plaintiff has not cited to any provision in the Credit Agreement, nor have I found one, which permits plaintiff to unilaterally set the Determination Date on an arbitrary day and fix the variable interest rate provided for in the Agreement irrespective of any subsequent changes in the Prime Rate. I therefore recommend determining the annual percentage rate by averaging the Prime Rate in effect on the day defendant's billing cycle would have closed each month throughout the period during which interest accrued. This method more accurately represents the expectations of the parties to the Credit Agreement. Using this method, I calculate the average Prime Rate figure in effect from November 29, 2006 through March 11, 2008 to be 7.84%, entitling plaintiff to interest at the rate of 9.34%, resulting in $7,515.93 in interest on the principal sum of $62,626.16. I calculate the average Prime Rate in effect from March 12, 2008 through September 4, 2011 to be 3.64% entitling plaintiff to interest at the rate of 5.14%,

---

[7] Historical prime rates are available at http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm.
[8] On that date, the Prime Rate was 8.25%, which, when added to the 1.5% Rate Differential, yields a 9.75% interest rate.

7

resulting in $10,588.38 on the adjusted principle sum of $58,857.02, as of September 4, 2011. Accordingly, I respectfully recommend that plaintiff be awarded $18,104.31 in interest.

Conclusion

For the foregoing reasons, I respectfully recommend that judgment be entered against defendant Black in the total amount of $76,961.33, comprised of $58,857.02 for the unpaid principal balance on defendant's account and $18,104.31 in interest through September 4, 2011. Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before September 26, 2011. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendant, and to file proof of service with the Court.[9]

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Dated: Brooklyn, New York
September 9, 2011

*U:\ES 2011\Damages Inquests\First Tenn Bank v. Black\First Tenn Bank v. Black - final.doc*

---

[9] In light of the fact that plaintiff's service of its supplemental motion upon defendant was returned as undeliverable to the Ocean Avenue address, plaintiff is directed to attempt to identify defendant's current address.